Thy B. Bui (SBN 256383)
tbui@maynardnexsen.com
Julia Levitskaia (SBN 286042)
jlevitskaia@maynardnexsen.com
MAYNARD NEXSEN LLP
2121 Avenue of the Stars, Suite 650
Los Angeles, CA 90067
Telephone:   310.596.4500
Facsimile:   205.254.1999

Attorneys for Defendant
THE ELEVANCE HEALTH COMPANIES
OF CALIFORNIA, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA SMITH, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>THE ELEVANCE HEALTH COMPANIES OF CALIFORNIA, INC., an Indiana Corporation; TAHISHA BIZZEL, an Individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>[*Removed from Sacramento Superior Court Case No. 26CV002946*]<br><br>**DEFENDANT THE ELEVANCE HEALTH COMPANIES OF CALIFORNIA, INC.'S NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1331, 1441 AND 1446 (FEDERAL QUESTION)**<br><br>Complaint Filed:   February 5, 2026<br>Removal Date:   March 20, 2026<br>Trial Date:   None Yet |

DEF. THE ELEVANCE HEALTH COS. OF CAL., INC.'S NOT. OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF CECILIA SMITH AND HER COUNSEL OF RECORD:**

Please take notice that Defendant The Elevance Health Companies of California, Inc. hereby removes this action from Sacramento County Superior Court to the United States District Court for the Eastern District of California. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because several of Plaintiff's causes of action are completely preempted under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Accordingly, this action is removable under 28 U.S.C. §§ 1441 and 1446. The following is a short and plain statement of the grounds for removal pursuant to 28 U.S.C. § 1446(a).

## FACTUAL AND PROCEDURAL BACKGROUND

1. This case arises from Plaintiff Cecilia Smith's employment with Elevance Health.

2. On February 5, 2026, Plaintiff filed this action in Sacramento County Superior Court, Case No. 26CV002946 (the "State Court Action"). She asserts seven causes of action under the California Fair Employment and Housing Act: (1) disability discrimination; (2) age discrimination; (3) failure to accommodate; (4) failure to engage in the interactive process; (5) retaliation; (6) hostile work environment and harassment; (7) failure to prevent discrimination, harassment, and retaliation. She also alleges causes of action for (8) negligent hiring, supervision, and retention; (9) intentional infliction of emotional distress; (10) negligent infliction of emotional distress; (11) wrongful termination in violation of public policy; and (12) unfair business practices under California Business and Professions Code § 17200. She also asserts the sixth, ninth, and tenth causes of action against Defendant Tahisha Bizzle.

3. Pursuant to 28 U.S.C. § 1446(a), attached hereto as **Exhibits 1-5** are true and correct copies of all process, pleadings, and orders served upon Elevance

DEF. THE ELEVANCE HEALTH COS. OF CAL., INC.'S NOT. OF REMOVAL

Health in the state court action, including the (1) Summons, (2) Complaint, (3) Civil Case Cover Sheet, (4) Notice of Civil Home Court Assignment and Case Management Conference, and (5) Elevance Health's Answer. No other process, pleadings, and orders have been served or filed in the state court action.

4.     Venue is proper in the Eastern District of California because the state court action is pending in Sacramento County, which lies within this District. 28 U.S.C. §§ 84(b), 1441(a).

5.     Defendant Tahisha Bizzle has not been served with the Summons and Complaint in this action as of the date of this Notice of Removal. Nonetheless, Bizzle hereby consents to removal of this action to federal court.[1] Bizzle's consent to removal does not constitute a waiver of any defense available to her, including but not limited to defenses of lack of personal jurisdiction, insufficient process, or insufficient service of process, all of which are expressly reserved.

## TIMELINESS OF REMOVAL

6.     Elevance Health was served with the Complaint on February 19, 2026. This Notice of Removal is timely filed within thirty (30) days of service pursuant to 28 U.S.C. § 1446(b).

## FEDERAL QUESTION JURISDICTION
## (LMRA SECTION 301 PREEMPTION)

7.     Section 301 of the LMRA, 29 U.S.C. § 185, provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." Section 301 has complete preemptive force: any state-law claim that is "substantially dependent" upon analysis of a collective bargaining agreement ("CBA") is completely preempted and must be treated as a federal claim arising under Section 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220

---

[1] Although section 1446(b)(2)(A) does not require the consent of an unserved defendant, Ms. Bizzle provides consent out of an abundance of caution and to confirm that all named defendants are aligned in seeking removal. *Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011).

DEFS.' THE ELEVANCE HEALTH COS. OF CAL., INC.'S NOT. OF REMOVAL

(1985); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

8.    In the Ninth Circuit, the preemption inquiry is whether a claim is "inextricably intertwined with consideration of the terms of [a] labor contract," or whether adjudication of the claim requires the court to "interpret" specific CBA provisions. *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059, 1065 n.12 (9th Cir. 2007). A claim is preempted if it cannot be "resolved by looking to" state law, but instead requires interpretation of the CBA. *Id.* at 1060. Mere "reference to" or "consistency with" the CBA does not trigger preemption; actual "interpretation" of specific CBA terms is required. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).

9.    Complete preemption under Section 301 is an independent and sufficient basis for federal removal jurisdiction, even where the Complaint pleads only state-law causes of action. *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23–24 (1983); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968).

10.    At all relevant times, Elevance Health employed Plaintiff as a bargaining unit employee covered by the collective bargaining agreement between Elevance Health/Anthem, Inc. and the Office and Professional Employees International Union, Local 29, AFL-CIO (the "Agreement" or "CBA"), effective as of October 1, 2021, and in force through September 30, 2024. The CBA is a contract between an employer and a labor organization representing employees in an industry affecting commerce within the meaning of Section 301(a) of the LMRA. 29 U.S.C. § 185(a). A true and correct copy of the CBA is attached as **Exhibit 6**.

11.    The Agreement is a comprehensive collectively bargained instrument that governs, among other things, the terms and conditions under which Plaintiff could be disciplined or discharged, her leave rights and procedures, her remote work arrangement, her wage and hour entitlements, and the exclusive procedure

3

for resolving disputes arising under the Agreement.

12. Plaintiff herself acknowledges the existence of the collective bargaining relationship, as she alleges that she learned of her termination from her "Union Representative" and that she had sought union assistance in response to Defendants' alleged conduct (Compl. ¶¶ 28, 43.)

13. The LMRA completely preempts several of her claims as their adjudication requires CBA interpretation:

14. **Wrongful Termination (Eleventh Cause of Action).** Plaintiff alleges Elevance Health terminated her employment on February 13, 2024, while a purported appeal of Elevance Health's denial of her leave extension was still pending, and that she did not learn of her termination until mid-March 2024 through her union representative. (Compl. ¶ 43.)

15. The Agreement conditions all terminations on "just cause." (Ex. 6 at 3.) Article 6(a) provides that "[t]he Employer shall have the right to discharge or suspend any associate for just cause," and Article 6(d) further provides that "[d]iscipline and/or discharge shall be administered only for just cause." (*Id.*) Plaintiff alleges Elevance Health terminated her employment on February 13, 2024, during a pending appeal of Elevance Health's denial of her leave extension, and that she did not learn of the termination until mid-March 2024 through her union representative. (Compl. ¶ 43.) Plaintiff further alleges she submitted a medical certification on January 23, 2024, with a return-to-work date of April 1, 2024, and that Elevance Health terminated her employment based on alleged failure to provide documentation that Plaintiff maintains she never received notice of. (*Id.* ¶¶ 38-42.) Whether Elevance Health had just cause to terminate Plaintiff's employment—including whether termination during a pending appeal period, or predicated on an alleged failure to provide documentation that Plaintiff claims she was never properly notified about, satisfied the just-cause standard—requires interpretation of the Agreement. *Allis-Chalmers Corp.*, 471 U.S. at 215–16;

*Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052–53 (9th Cir. 2003) (section 301 preempts claims requiring interpretation of just-cause standard).

16.    The Agreement's progressive discipline framework further requires interpretation. Article 6(c) provides that except for just cause calling for immediate termination, progressive discipline shall precede discharge or suspension for less serious offenses. In such cases, the associate may be given a warning, formal counseling, verbal warning, written warning, or final written warning (which may include a paid suspension) before termination. (Ex. 6 at 3.) Plaintiff disputes the validity of two predicate disciplinary steps: (i) the written warning issued November 9, 2023, which she alleges was retaliatory; and (ii) the administrative leave imposed November 10, 2023, following an accusation of insubordination. (Compl. ¶¶ 32, 35.) Whether those steps were issued for "sufficient cause" under Article 6(c), and whether they properly served as predicates to termination, cannot be adjudicated without interpreting the Agreement's progressive discipline provisions.

17.    The Agreement's Attendance Policy establishes that FMLA, CFRA, and FEHA-protected absences do not constitute unscheduled time off and may not subject an associate to corrective action. (Ex. 6 at 70.) Plaintiff alleges her absences were FMLA- and CFRA-protected. (Compl. ¶¶ 17, 37.) Whether those absences were "protected" under the Agreement's Attendance Policy—such that they could not be counted toward corrective action steps leading to termination—is a question of CBA interpretation. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016).

18.    **Retaliation (Fifth Cause of Action).** Plaintiff alleges Elevance Health retaliated against her by: (i) issuing a written warning on November 9, 2023, after she reported that Ms. Bizzle altered her timecard; (ii) placing her on administrative leave on November 10, 2023, after she was accused of insubordination at a meeting attended by Bizzle, Human Resources representative

5

Christopher Russell, and Executive Director Sharon Cain; and (iii) terminating her employment on February 13, 2024. (Compl. ¶¶ 31-35, 43.)

19.    Each of these alleged retaliatory acts is a formal disciplinary step expressly governed by the Agreement. (Ex. 6 at 3, 66.) The written warning is a step under Article 6(c)'s progressive discipline sequence, which requires "sufficient cause." (*Id.* at 3.) The administrative leave is a suspension under Article 6(a), which requires "just cause." (*Id.* at 3.) The termination is likewise subject to the just-cause standard. (*See* paragraphs 15-17, *supra*.) In the Ninth Circuit, where the retaliatory act is itself a disciplinary action governed by a CBA, retaliation claims are preempted because a court cannot evaluate the propriety of the disciplinary act without interpreting the CBA's discipline standards. *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 691–92 (9th Cir. 2001), *as amended* (Aug. 27, 2001); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

20.    The Agreement's Corrective Action Guidelines expressly address "insubordination" as a basis for discipline, providing that discipline may be initiated for violations of company policies, work standards, insubordination, or other acts of misconduct, and that any or all corrective action steps may be utilized depending on individual circumstances. (Ex. 6 at 66.) Whether the alleged insubordination accusation on November 10, 2023, was a proper predicate for administrative leave under those Guidelines—or whether, as Plaintiff alleges, it was pretextual—cannot be resolved without interpreting those provisions.

21.    **Failure to Accommodate (Third Cause of Action).** Plaintiff alleges Elevance Health failed to accommodate her disability by denying her flexibility in timekeeping during periods of intermittent FMLA leave, failing to maintain her remote work arrangement, and failing to reinstate her following her leave. (Compl. ¶¶ 69-73.)

22.    The Agreement's Remote Work program requires 30-day advance

notice before changing an associate's eligibility for remote work and requires management to meet with the Union prior to any associate's involuntary termination of participation in the Remote Work program. (Ex. 6 at 57-58.) The Agreement further provides detailed eligibility criteria, including that associates must meet production and quality standards, maintain attendance in good standing, and comply with workspace and HIPAA requirements. (*Id.* at 57.) Plaintiff alleges she had been working remotely but was suddenly instructed to report on-site without being told to bring her work computer, and that upon arrival she was required to return home, retrieve her equipment, and come back to the office. (Compl. ¶¶ 21-22.) Whether Elevance Health complied with its contractual notice and union-meeting obligations before altering Plaintiff's remote work arrangement—and whether any alleged change in Plaintiff's remote work status was consistent with the Agreement's eligibility criteria and procedural requirements—requires interpretation of the Agreement's Remote Work provisions. *Kobold*, 832 F.3d at 1033.

23. **Failure to Engage in the Interactive Process (Fourth Cause of Action).** Plaintiff alleges Elevance Health failed to initiate or engage in a good-faith interactive process and failed to properly advise her of documentation requirements for extending her leave. (Compl. ¶¶ 75-85.)

24. The Agreement incorporates the Company's leave policies and establishes specific procedural obligations governing leave administration. Article 16(a) provides that bargaining unit associates will be eligible for leaves of absence, including disability leave and family care leave, "as defined under applicable law and on the same basis as non-bargaining unit associates in the company, except as defined differently in this Article." (Ex. 6 at 17.) Critically, the Agreement provides that "[l]eaves of absences may be extended and requests for extensions shall not be arbitrarily denied." (*Id.* at 18.) This "not arbitrarily denied" standard is a negotiated contractual term that requires interpretation: determining whether a

denial was "arbitrary" necessarily involves construing the Agreement's leave framework, including the types of documentation that may be required, the procedures for requesting extensions, and the grounds on which extensions may be granted or denied. Plaintiff alleges Elevance Health denied her leave extension based on purportedly insufficient documentation, terminated her during an ongoing appeal period, and failed to properly notify her of documentation requirements. (Compl. ¶¶ 40-43.) Adjudicating whether Elevance Health's denial was "arbitrary" under the Agreement and whether the termination during a pending appeal violated the Agreement's leave procedures requires interpretation of Article 16. *Burnside*, 491 F.3d at 1059–60.

25.    **Intentional and Negligent Infliction of Emotional Distress (Ninth and Tenth Causes of Action).** Plaintiff's IIED and NIED claims are based on the same course of conduct underlying her termination, retaliation, and discipline claims—specifically, the written warning, administrative leave, and termination. (Compl. ¶¶ 112-129.) Because those underlying disciplinary acts are governed by the Agreement's just-cause and progressive discipline provisions (Ex. 6 at 3, 66, 68-69), the emotional distress claims are equally dependent on interpretation of those provisions. *Allis-Chalmers Corp.*, 471 U.S. at 218 ("[I]f the state tort action purports to define the meaning of the contract relationship, that action is preempted."); *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 538–39 (9th Cir. 1987).

26.    **Negligent Hiring, Supervision, and Retention (Eighth Cause of Action).** Plaintiff alleges Elevance Health knew or should have known that Bizzle, Russell, and Cain were engaging in discriminatory and retaliatory conduct, and failed to take corrective or preventive measures. (Compl. ¶¶ 107-111.)

27.    The Agreement's Corrective Action Guidelines establish the framework under which Elevance Health may discipline employees for misconduct, providing that discipline may be initiated for violations of company

policies, insubordination, or other acts of misconduct, and that any or all corrective action steps may be utilized depending on individual circumstances. (Ex. 6 at 66.) Article 21 provides that associates are entitled to have a steward present at investigatory interviews that may result in discipline. (*Id.* at 20.) Whether Elevance Health was obligated under the Agreement to initiate corrective action against Plaintiff's supervisors for their alleged misconduct, and whether its failure to do so breached an Agreement obligation, cannot be adjudicated without interpreting the corrective action framework. *Dahl v. Rosenfeld*, 316 F.3d 1074, 1078 (9th Cir. 2003).

28.    **UCL — Wage and Hour Predicates (Twelfth Cause of Action).** Plaintiff's Twelfth Cause of Action under California Business and Professions Code § 17200 alleges that Elevance Health failed to provide legally compliant meal and rest periods and failed to timely pay all wages at the time of termination. (Compl. ¶¶ 137-142.) These predicate violations are substantially dependent upon interpretation of specific Agreement provisions.

29.    The Agreement's Remote Work program provides that remote associates are required to take meal and rest breaks pursuant to Company policy, and that meal breaks for California overtime-eligible associates cannot be waived. (Ex. 6 at 58.) Article 11 provides that associates shall be granted a fifteen-minute rest period without deduction in pay for each four-hour period of work (*Id.* at 13.) Article 13(c) provides for a non-paid meal period of either thirty or forty-five minutes at the associate's choice. (*Id.* at 14.) Whether Plaintiff received compliant meal and rest periods requires interpretation of these negotiated provisions and their interaction with Elevance Health's remote work meal-break requirements. *Burnside*, 491 F.3d at 1059–60.

30.    Article 10 of the Agreement provides that upon termination, pay for earned but unused PTO shall be granted to associates. (Ex. 6 at 12.) Plaintiff's claim that Elevance Health failed to timely pay all wages owed at termination

requires interpretation of the Agreement's PTO payout obligation, the applicable wage scale in Appendix A-2, and any additional benefit obligations arising under the Agreement. (*Id.* at 12, 36-40); *Gregory*, 317 F.3d at 1052.

31.    In sum, Plaintiff's Third, Fourth, Fifth, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action are completely preempted by Section 301 because each requires interpretation of specific Agreement provisions governing discipline, leave, remote work, attendance, or wages.

## PREEMPTION EXTENDS TO PLAINTIFF'S DISCRIMINATION AND HARASSMENT CLAIMS

32.    **Disability Discrimination (First Cause of Action), Age Discrimination (Second Cause of Action), Hostile Work Environment (Sixth Cause of Action), and Failure to Prevent Discrimination (Seventh Cause of Action).** These claims are likewise preempted because they cannot be adjudicated without interpreting the Agreement. Critically, Article 12 of the Agreement contains a comprehensive non-discrimination provision, providing that "[n]either the Employer nor the union shall discriminate by reason of union activity, age (40 and above), color, creed, disability (physical and mental, including HIV and AIDS), genetic information, gender identity, gender expression, marital status, medical condition (genetic characteristics, cancer or a record or history of cancer), military or veteran status, national origin, race, religion (includes religious dress and grooming practices), sex/gender (including pregnancy, childbirth, breastfeeding and/or related medical condition), and sexual orientation, nor shall they discriminate based on any other status or characteristic protected by state or federal law." (Ex. 6 at 14.) Plaintiff's discrimination claims thus implicate not only FEHA but also the parallel contractual non-discrimination obligations that the parties specifically negotiated. Adjudicating whether Elevance Health discriminated against Plaintiff requires interpreting Article 12's scope and application. Moreover, Plaintiff does not allege that she was terminated,

disciplined, or denied accommodations solely because of her protected status, independent of any challenge to the disciplinary actions themselves. Rather, her discrimination claims are inextricably intertwined with and entirely derivative of her challenges to the specific disciplinary actions taken against her: the written warning, the administrative leave, and the termination. (*See* Compl. ¶¶ 52, 60-62, 96-99, 103-105.) To prevail on her discrimination claims, Plaintiff must establish that these disciplinary actions lacked legitimate justification, which necessarily requires the factfinder to interpret and apply the Agreement's just-cause and progressive discipline standards to determine whether the proffered reasons were pretextual. Each of these actions is expressly governed by the Agreement's just-cause, progressive discipline, and corrective action provisions. (Ex. 6 at 3, 66.)

33.    The Ninth Circuit has consistently held that where the allegedly discriminatory or retaliatory act is itself a disciplinary action governed by a CBA, the claim is preempted because a court cannot evaluate the propriety of the disciplinary act without interpreting the CBA's discipline standards. *Cramer*, 255 F.3d at 691–92. To determine whether Plaintiff was discriminated against, a factfinder would necessarily have to assess whether the written warning, administrative leave, and termination were issued for "just cause" or "sufficient cause" under the Agreement—the very inquiry that triggers Section 301 preemption.

34.    *Livadas v. Bradshaw*, 512 U.S. 107 (1994) and *Humble v. Boeing Co.*, 305 F.3d 1004 (9th Cir. 2002) are distinguishable. In *Livadas*, the Supreme Court held that a state-law claim is not preempted where the CBA is used only as a "reference point" and does not require interpretation. 512 U.S. at 124-25. In *Humble*, the Ninth Circuit applied this principle to hold that a disability discrimination claim was not preempted where the plaintiff's "rights under [FEHA] exist independently of any collective bargaining agreement" and the claim could be resolved without interpreting the CBA. 305 F.3d at 1008-09. Critically,

11

the *Humble* court acknowledged that preemption does apply "where the discriminatory act complained of is the discipline imposed." *Id.* at 1010. That is precisely the situation here, as Plaintiff's discrimination claims challenge the written warning, administrative leave, and termination-all of which are expressly governed by the Agreement's discipline provisions. Furthermore, unlike in *Humble*, the Agreement here contains an express contractual non-discrimination provision (Article 12) that parallels FEHA's protections but arises from the collective bargaining process. Plaintiff's discrimination claims thus necessarily implicate interpretation of this negotiated contractual term, not merely independent statutory rights. *See Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1112 (9th Cir. 1999) (preemption applies where claims are "inextricably intertwined" with CBA interpretation).

35.    Plaintiff's failure-to-accommodate and interactive-process claims (Third and Fourth Causes of Action) likewise require Agreement interpretation. As discussed above (*see* paragraphs 21-24, *supra*), these claims are premised on alleged deficiencies in leave administration and remote work procedures—both governed by specific, negotiated provisions in Article 16 and the Remote Work Program. Unlike in *Humble*, where the accommodation at issue (job restructuring) was not addressed in the CBA, here the very accommodations Plaintiff sought—remote work eligibility, leave extension procedures, and timekeeping flexibility—are expressly governed by the Agreement. The Remote Work Side Letter establishes detailed eligibility criteria, notice requirements, and procedural safeguards that must be interpreted to determine whether Elevance Health properly administered Plaintiff's remote work arrangement. (Ex. 6 at 55-60.) Similarly, Article 16's "not arbitrarily denied" standard for leave extensions is a substantive contractual term—not merely a reference to external law—that requires interpretation to adjudicate Plaintiff's claims. (*Id.* at 18.)

36.    Finally, Plaintiff's hostile work environment claim is based on the

12

same supervisory conduct that resulted in the CBA-governed disciplinary actions. The Agreement's Management Rights provision defines the scope of supervisory authority, providing that "[d]irection of the working forces includes the rights of supervision in the employment relationship which shall be limited only by the express provisions set forth in this Agreement." (Ex. 6 at 1.) Evaluating whether supervisory conduct constituted actionable harassment requires interpreting these contractually defined limits on supervisory authority. Moreover, Article 12's contractual non-discrimination provision prohibits harassment based on disability and age, creating parallel contractual obligations that must be interpreted alongside any FEHA claim. (*Id.* at 14.) The claims against Defendant Bizzle individually are equally preempted because they arise from the same supervisory conduct governed by the Agreement's Management Rights provision and are derivative of the same Agreement-governed disciplinary actions. Accordingly, Plaintiff's discrimination and harassment claims are preempted.

## THE GRIEVANCE AND ARBITRATION CLAUSE CONFIRMS LMRA GOVERNANCE

37. The Agreement provides that "[a]ny grievance arising in connection with the application or interpretation of the provisions of this Agreement which involves an alleged injury or detriment to an associate . . . shall be reduced to writing and submitted according to [the grievance] procedure." (Ex. 6 at 20-22.) Discharge grievances must be presented within five working days, and a Step 1 meeting regarding a termination shall occur within seven working days of filing. (*Id.* at 20-21.) The arbitrator's jurisdiction extends solely to "claims of violation of specific provisions of the agreement," and the arbitrator's decision is "final and binding on all parties." (*Id.* at 21.)

38. Plaintiff herself invoked the contractual dispute-resolution process: the Complaint alleges she learned of her termination from her union representative and submitted an appeal on March 21, 2024. (Compl. ¶ 43.) The Complaint further

13

acknowledges that Plaintiff "contacted her union representative for assistance" when she believed she was being targeted for termination. (*Id.* ¶ 28.) The existence of this collectively bargained dispute-resolution mechanism, and Plaintiff's own resort to it, further confirms that the claims are governed by and substantially dependent upon the Agreement. *Audette*, 195 F.3d at 1112. Plaintiff cannot invoke the benefits of the collective bargaining relationship—including union representation, grievance procedures, and contractual protections—while simultaneously arguing that her claims are independent of the Agreement.

## SUPPLEMENTAL JURISDICTION OVER REMAINING STATE-LAW CLAIMS

39.    To the extent any of Plaintiff's state-law claims are not completely preempted by Section 301 of the LMRA, this Court should exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a). Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

40.    All of Plaintiff's claims—including Disability Discrimination (First Cause of Action), Age Discrimination (Second Cause of Action), Hostile Work Environment (Sixth Cause of Action), and Failure to Prevent Discrimination (Seventh Cause of Action)—arise from the same nucleus of operative facts: her employment with Elevance Health, the disciplinary actions taken against her, and her ultimate termination. These claims share common questions of fact with the preempted claims, including the circumstances of Plaintiff's discipline, the conduct of her supervisors, and the reasons for her termination.

41.    The Ninth Circuit has consistently held that supplemental jurisdiction is appropriate where claims "derive from a common nucleus of operative fact."

*Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Here, Plaintiff's remaining state-law claims are inextricably intertwined with the factual allegations underlying her preempted claims—all arise from the same employment relationship, the same supervisory conduct, and the same adverse employment actions.

42.    Exercising supplemental jurisdiction promotes judicial economy, convenience, and fairness to the parties. Adjudicating Plaintiff's claims in a single forum will avoid duplicative litigation, inconsistent judgments, and the inefficiencies of parallel state and federal proceedings. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Moreover, because the preempted claims constitute the heart of Plaintiff's case—challenging the propriety of her discipline and termination under the CBA—the Court's resolution of those claims will necessarily address the core factual disputes underlying the remaining state-law claims.

## RESERVATION OF RIGHTS AND DEFENSES

43.    By filing this Notice of Removal, Elevance Health does not waive any defense, including but not limited to defenses of lack of personal jurisdiction, improper venue, insufficient process, or insufficient service of process. Elevance Health expressly reserves all such defenses.

44.    Elevance Health also expressly reserves its right to compel arbitration pursuant to any applicable arbitration agreement between Plaintiff and Elevance Health, and the filing of this Notice of Removal does not constitute a waiver of that right.

## CONCLUSION

45.    This Court has original federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are completely preempted by Section 301 of the LMRA, 29 U.S.C. § 185. To the extent any claims are not preempted, this Court has supplemental jurisdiction over those claims pursuant to

28 U.S.C. § 1367(a) because they arise from the same nucleus of operative facts. Removal is proper under 28 U.S.C. §§ 1441(a) and 1446. Elevance Health respectfully requests that this Court accept removal of this action and exercise jurisdiction over it accordingly.

Dated: March 20, 2026        MAYNARD NEXSEN LLP

By:   /s/ Thy B. Bui
      Thy B. Bui
      Julia Levitskaia
      Attorneys for Defendant
      THE ELEVANCE HEALTH COMPANIES OF CALIFORNIA, INC.

DEFS.' THE ELEVANCE HEALTH COS. OF CAL., INC.'S NOT. OF REMOVAL